## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

MAURICE DOIRE and JOSHUA HOYE,
on behalf of themselves and all
others similarly situated      )
                               )    Case No. 1:23-cv-310
                               )
           Plaintiffs,     )
v.                              )
                               )
SYNAGRO WOONSOCKET, LLC, and   )
JACOBS ENGINEERING GROUP, INC.    )
                               )
                               )
          Defendants.     )

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Maurice Doire and Joshua Hoye on behalf of themselves and all others similarly situated (the "**Plaintiffs**"), by and through their undersigned counsel, brings this complaint against Defendants Synagro Woonsocket, LLC, and Jacobs Engineering Group, Inc. (collectively, the "**Defendants**") and allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this class action against Defendants Synagro Woonsocket, LLC ("**Synagro**"), and Jacobs Engineering Group, Inc. ("**Jacobs**") for the noxious odor emissions emanating from the Wastewater Treatment Plant ("WWTP") and sewage sludge incinerator (the "Incinerator[1]") that they respectively operate and maintain in Woonsocket, Rhode Island.[2] Through their two-part, connected operations, Defendants release noxious odors that invade

---

[1] Cumulatively, the WWTP and the Incinerator will be referred to as the Facility.

[2] Synagro operates and maintains the Incinerator. Jacobs operates and maintains the WWTP.

Plaintiffs' properties, causing injuries and damages through nuisance and negligence, for which Plaintiffs seek compensatory relief against Defendants, as well as injunctive relief not inconsistent with Defendants' federally and state enforced air permits.

2.       Plaintiffs and other similarly situated members of the residential community in Woonsocket near Defendants' Facility have exhausted every known avenue short of litigation prior to filing this lawsuit. Unfortunately, despite numerous efforts by community members to notify Defendants of the adverse impacts they have caused on surrounding private properties, and get the problems resolved, Defendants' odor emissions have continued to invade Plaintiff and Class Member homes.

## PARTIES

3.       At all times relevant hereto, Plaintiff Maurice Doire has owned and resided at a residential property located at 17 Briens Ct, City of Woonsocket, County of Providence, State of Rhode Island. Plaintiff is an individual domiciled in Rhode Island. Therefore, Plaintiff is a citizen of the State of Rhode Island.

4.       At all times relevant hereto, Plaintiff Joshua Hoye has resided and intended to remain at 132 Cass Ave, in the City of Woonsocket, County of Providence, State of Rhode Island. Plaintiff is an individual domiciled in Rhode Island. Therefore, Plaintiff is a citizen of the State of Rhode Island.

5.       Defendant Synagro Woonsocket, LLC is a limited liability company formed under the laws of the State of Rhode Island. Synagro operates and maintains the Incinerator located at 15 Cumberland Hill Road, Woonsocket, Rhode Island. Upon information and belief, Defendant Synagro's corporate activities are directed, controlled, and coordinated by its sole member, Synagro – WWT, Inc., which is a Maryland corporation with its principal place of business in

Maryland. No member of Synagro Woonsocket, LLC is a citizen of Rhode Island. Synagro's Resident Agent in Rhode Island is CT Corporation System, located at 450 Veterans Memorial Parkway, Suite 7A, East Providence, Rhode Island 02914.

6.    Defendant Jacobs Engineering Group, Inc. is incorporated in Delaware and headquartered in Texas and is thus a citizen of Delaware and Texas. Jacobs operates and maintains the WWTP located at 11 Cumberland Hill Road, Woonsocket, Rhode Island. Jacobs' Resident Agent in Rhode Island is CT Corporation System, located at 450 Veterans Memorial Parkway, Suite 7A, East Providence, Rhode Island 02914.

7.    Defendants, their agents, and their predecessors, operate and maintain the connected WWTP and Incinerator Facility located at 11 and 15 Cumberland Hill Road in the City of Woonsocket, County of Providence, State of Rhode Island.

## JURISDICTION AND VENUE

8.    Plaintiffs are citizens of Rhode Island.

9.    Upon information and belief, Defendants are citizens of Maryland (Synagro), Delaware, and Texas (Jacobs).

10.    This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy greatly exceeds $75,000, exclusive of interests and costs, and there is a complete diversity of citizenship between the parties.

11.    Separately, and in addition to diversity jurisdiction under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction pursuant to the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d)(2)(a), because there are 100 or more putative class members, the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs, and one or more members of the putative class is a citizen of a state different from any defendant.

12.    Venue is proper in this District under 29 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District and because the property that is the subject of this action is situated in this District.

## CLASS ALLEGATIONS

**A.    Definition of the Class**

13.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

**All owner-occupants and renters of residential property located within one (1.0) mile of the Defendant's facility.**

The class area boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").  Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

14.    This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

a.    The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

b.    There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

c.    Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

d.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e.    The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and,

  f.  There are no unusual difficulties foreseen in the management of this class action.

  g.  Plaintiffs, whose claims are typical of those of the Class, through experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

15. Preliminary data indicates that there are thousands of residential households within a one (1) mile radius of Defendants' facility. Therefore, the class is so numerous that joinder is impracticable.

**C. Commonality**

16. Pursuant to Fed. R. Civ. P. 23(b)(3), numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

  a.  whether and how Defendants negligently, intentionally, recklessly, and/or willfully, failed to operate and maintain the Facility;

  b.  whether Defendants owed any duties to Plaintiffs;

  c.  which duties Defendants owed to Plaintiffs;

  d.  whether and to what extent Defendants failed to exercise reasonable care in operating and maintaining the Facility;

  e.  which steps Defendants have and have not taken in order to control the emission of noxious odors from the Facility;

  f.  whether and to what extent the Facility's noxious odors were dispersed in and around the Class Area;

  g.  whether Defendants' Facility caused noxious odors to be dispersed in and around the Class Area;

  h.  whether Defendants caused owner-occupants and renters of residential property of ordinary sensibilities to suffer harm;

  i.  whether it was reasonably foreseeable that Defendants' failure to properly

5

operate and maintain the Facility would result in off-site odor emissions, including the invasion of private property interests in and around the Class Area;

j.     whether Defendants' actions were unreasonable;

k.     whether Defendants' odor emissions have substantially interfered with the ability of residents of ordinary sensibilities within the Class Area to use and enjoy their private residences;

l.     whether the degree of harm suffered by Plaintiffs and the class constitutes a substantial interference with their private property rights;

m.    whether private residential property values within the Class Area have been adversely impacted; and

n.     the proper measure of damages incurred by Plaintiffs and the Class.

**D.    Typicality**

17.    Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class.   If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

18.    The claims of Plaintiffs and the other Class members have a common cause, and their claims are of the same type. The claims originate from the same common source and the same failure(s) of Defendants to properly operate and maintain the Facility.

19.    Class Members have suffered similar injuries and harm as a result of the invasion of their private residential properties by noxious odors emitted from Defendants' facility.

**E.    Adequacy of Representation**

20.    Plaintiffs' claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class.  Plaintiffs will fairly and adequately represent the interests of the

Class and do not have interests adverse to the Class.

21.    Plaintiffs have retained the services of counsel who are highly experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by noxious industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class members.

**F.    Class Treatment Is the Superior Method of Adjudication**

22.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

23.    Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

24.    Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

25.    The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

26.    The proposed class action is manageable and administratively feasible.

## <u>GENERAL ALLEGATIONS</u>

27.    Defendant Jacobs operates and maintains the WWTP located at 11 Cumberland Hill Road in Woonsocket, Rhode Island.

28.    Defendant Synagro operates and maintains the connected solid waste Incinerator located at 15 Cumberland Hill Road in Woonsocket, Rhode Island.

29.    Defendants, including their predecessors and agents, have at all times relevant

hereto exercised control over the operation and maintenance of the Facility.

30.     Defendants' Facility is surrounded by residential properties.

31.     Plaintiffs reside within 1 mile of the Facility's property boundary.

32.     Plaintiffs' properties have been, and continue to be, repeatedly invaded by noxious odors on occasions too numerous to list individually.

33.     Through their respective industrial processes, Defendants have, and continue to, unnecessarily and unreasonably cause noxious odors to be emitted off-site and into Plaintiffs' homes and similarly situated neighboring residential properties in Woonsocket.

34.     The noxious odors that entered Plaintiffs' properties originated from Defendants' Facility.

### *Defendants' Industrial Process*

35.     Defendants operate a two-part processing plant that is collectively responsible for receiving, storing, treating, processing, and disposing of sewage waste from neighboring communities and wastewater treatment facilities.

36.     Defendants' operations involve the receipt, storage, treatment, and processing of raw sewage by Jacobs, which is dried and turned into "cakes" composed of sewage waste by Synagro. The sewage "cakes" are ultimately burned and/or otherwise disposed by Synagro through the Incinerator.

37.     The WWTP Facility operated and maintained by Jacobs receives and treats sewage from a wide swath of towns within the service area, including: Woonsocket, Rhode Island; North Smithfield, Rhode Island; Bellingham, Massachusetts, and Blackstone, Massachusetts.

38.     Raw sewage is delivered to the WWTP, where it is supposed to be treated and then the resulting sludge from the WWTP is delivered to the Incinerator where the sludge is supposed

to be dried and incinerated. In addition to the sewage waste received through Jacobs' WWTP, Synagro receives liquid or cake forms of biosolids (sewage waste) from more than two dozen municipalities in the region spanning multiple states for incineration and/or disposal.

39.     The WWTP process operated by Jacobs consists of: Coarse Screening, Commuation, Aerated Grit Removal, Primary Settling, Biological Treatment with Nutrient Removal, Secondar settling, Efficient Polishing Filters, Chlorination, and Dechlorination.

40.     Synagro receives and processes the sludge that is generated from the WWTP's treatment of the raw influent or up to 11 tons per day, in addition to the liquid and/or cake form of biosolids received by the Incinerator from more than 25 municipalities and wastewater treatment plants across the region.

41.     Before Synagro receives the sludge from the WWTP, Jacobs is responsible for ensuring that all sludge is delivered to the appropriate holding tank or gravity thickener, and then coordinating the management of its sludge handling facilities with Synagro.

42.     As part of its Incinerator operations, Synagro dewaters liquid and solid sludge within its five centrifuges. This process produces a biosolid "cake" made of sewage waste, which is then transported, incinerated, and/or otherwise disposed on site. The low-solid liquid from this process, known as "centrate," is discharged to the centrate pumping station, which transfers the centrate back to a gravity thickener for further solids removal before being incinerated and/or otherwise disposed.

43.     Defendants' Facility receives and produces substantial quantities of wastewater and waste sludge, which is composed of sewage waste, that is noxious and highly odiferous.

44.     The raw materials received, stored, and processed at Defendants' Facility are noxious and highly odiferous.

45.    The WWTP operations create odors that can escape into the surrounding community if not properly operated, controlled, maintained, handled, and treated.

46.    The Incinerator operations create odors that can escape into the surrounding community if not properly operated, controlled, maintained, handled, and treated.

47.    Through their operation and maintenance of the Facility, Defendants have a duty to take reasonable steps to control and prevent noxious odors from being emitted off-site into Plaintiffs' homes and community. Defendant is required to control its odorous emissions by, among other things, utilizing adequate odor mitigation and control technologies at the Facility; adequately operating and maintaining its odor mitigation and control technologies to prevent off-site odors; adequately and/or timely disposing of the waste, wastewater, and sludge produced through the Facility's industrial processes to prevent off-site odor emissions; ensure that the Facility has adequate capacity to receive, store, handle, and process the waste received at the Facility; and undertaking other reasonably odor mitigation, elimination, and control systems available to Defendants.

### *Defendants' Noxious Emissions*

48.    On occasions too numerous to list individually, Defendant has unreasonably emitted noxious odors into the ambient air outside of the Facility's property boundary.

49.    Due to Defendants' negligent and intentional actions, and inadequate efforts to prevent its noxious emissions from escaping into the adjacent residential neighborhood through the ambient air, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

50.    The noxious odors that entered Plaintiffs' properties originated from the Facility, where they are generated as a result of Defendants' operations.

51.    A properly operated and maintained WWTP and solid waste Incinerator will collect, capture, mitigate, and control odorous compounds to prevent noxious off-site odor emissions from invading the surrounding community.

52.    More than 75 households within the proposed Class Area have contacted Plaintiffs' counsel reporting and documenting the noxious odors they attribute to Defendants' Facility.

53.    Plaintiff Maurice Doire reported that because of Defendant's odor emissions, "[o]ur whole neighborhood smells like an open cesspool or at times like chemicals in the air." Mr. Doire reported that when the odors are present "[w]e cannot enjoy our home." He further reported that "[a]t night, can't sleep, during the day must go elsewhere to breathe. Also affects our eyes and throats at times."

54.    Plaintiff Joshua Hoye reported that because of Defendants' odor emissions, "[t]he odors that are smelled on a daily basis smell like I live across from a large city dump on a 90-degree day." He further reported that he "cannot walk outside w/o wanting to throw up." He also reported that as a result of the offensive odors from Defendants' Facility, "[o]n a daily basis from around 9 am – 11 am & 7 pm – 3 am, the smell is so bad that you cannot have your windows open to enjoy fresh air, even with brand new windows being closed you still cannot breathe fresh air. He "can't even think about going outside during those times."

55.    Defendants have negligently, intentionally, recklessly, and/or willfully failed to properly operate and maintain the Facility and have thereby caused the invasion of Plaintiffs' properties by noxious odors on intermittent and reoccurring dates too numerous to recount individually.

56.    Defendants have a well-documented history of negligently operating and maintaining the Facility and emitting noxious off-site odors.  Examples include, but are not limited

to, the following:

    A.    There have been numerous odor complaints filed by local residents with local governmental authorities regarding the Facility. For example, on May 15, 2022, the Facility received an odor complaint stating that "it smells very bad today on Cumberland Hill Rd." Other complaints on May 16, 2022 stated that "it smells like Waste." In response, Synagro "found [that the] dewatering scrubber faulted."

    B.    The Facility has been issued numerous Notices of Non-Compliance for exceedances of its permit limitations. By way of example, on multiple dates in June 2022, the Rhode Island Department of Environmental Management ("RIDEM") noted violations, including:

        i.    On June 6, 2022, the "DOBs for the secondary clarifier are at their maximum." Further, Jacobs indicated that "at the time for the Discharge the sludge blanket levels in all primary (2) and secondary (3) clarifiers were 'maxed out at 12 feet' indicating a significant excess inventory of solids had developed."

        ii.    On June 7, 2022, RIDEM found the following violations: (1) F038B Biosolids: Other Management Practice Violation; (2) A0012 Effluent Violations – Numeric effluent violation; (3) B0020 Management Practice Violations – Improper Operation and Maintenance.

        iii.    On June 8, 2022, RIDEM found the following violations: (1) F038B Biosolids: Other Management Practice Violation; (2) A0012 Effluent Violations – Numeric effluent violation; (3) B0020 Management Practice Violations – Improper Operation and Maintenance.

        iv.    On June 10, 2022, RIDEM performed an inspection and found the following violations: (1) F038B Biosolids: Other Management Practice Violation; (2) A0012 Effluent Violations – Numeric effluent violation; (3) B0020 Management Practice Violations – Improper Operation and Maintenance.

        v.    On June 13, 2022, RIDEM performed an inspection and found the following violations: (1) F038B Biosolids: (2) B0020 Management Practice Violations-Improper Operation and Maintenance. Detailed in the corresponding inspection report are the following conditions, amongst others:

            • "There is a high volume of solids in each of the effluent overflow channels…"

- "One of the secondary clarifiers . . . has sludge billowing throughout the tank. The water in the clarifier appears highly turbid."

- "The weir of one of the secondary clarifiers['] effluent has a high concentration of pin floc, signifying that some solids are washing out of the clarifer."

C.     On June 17, 2022, RIDEM issued a Notice of Noncompliance for odors extending beyond the property line.

D.     Defendants knew or should have known of the existence of an odor issue at the facility following a 2019 report done by Bowker and Associates for the City of Woonsocket, which analyzed odor emission problems at both the WWTP and Incinerator. The report identified multiple sources of noxious odor emissions at the Facility, including but not limited to: the chemical scrubbers serving Synagro should have been capable of 90% odor reducing efficiency but were only working at 50-60%, seal openings in the gravity thickener allowing odor to escape, faulty ductwork, bay doors being open for extended periods of time, inadequate procedures for offloading sludge from delivery trucks, inadequate procedures for trucks hauling waste off-site, and lack of proper coverings over the centrate pump station.

E.     On December 13, 2021, the United States Environmental Protection Agency ("USEPA") filed a complaint against the Facility for failure to properly operate the facility in accordance with the Clean Air Act.

F.     On March 15, 2023, the state of Rhode Island filed a complaint against the Facility for its repeated violations, including repeated discharges of partially treated sewage into the Blackstone River, which occurred as a result of numerous permit violations and Defendants' improper operations, maintenance, and waste handling procedures.

G.     Numerous media reports have documented the awful experiences of local residents due to Defendants' odor emissions. In one such report, a Woonsocket City Councilor stated, "How do you turn a city around that has such a poor smell attached to it? And when people come to our city, it smells bad."[3]

H.     Multiple community meetings before the Woonsocket City Council, where residents expressed their experiences with Defendants' odor problems.

57.     Defendants are required to control their noxious odors by, among other things,

---

[3] https://www.valleybreeze.com/news/new-odor-study-spurs-action-on-wastewater-smells/article_bc819789-8300-5882-ab44-2d07785cb19c.html (last visited July 12, 2023).

operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates odor emissions so as to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available odor mitigation measures, elimination, and control systems at the Facility.

58.    The Facility has emitted, and continues to emit, noxious odors that are detectable outside the bounds of its property.

59.    The Facility has emitted noxious odors that have caused negative impacts to its neighbors in the Class Area.

60.    Plaintiffs and members of the putative class have suffered serious and substantial discomfort and inconvenience because of Defendants' odorous emission that have interfered with the use and enjoyment of their properties.

61.    The noxious odors emitted from Defendants' Facility are offensive and would be offensive to a reasonable person of ordinary health and sensibilities and have caused property damages.

62.    The invasion of Plaintiffs' properties and those of the Class members by noxious odor emissions has adversely impacted the value of their properties, prevented Plaintiffs' from experiencing the full value of their properties, and interfered with the ordinary use and enjoyment of their properties.

63.    The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, health care, retail trade, ministry, education, dining, and lodging.

64.    Plaintiffs and the Class are a limited subset of individuals in Providence County, and the Class Area, which includes only owner/occupants and renters of residential property who

live within the Class Area and fit within the Class Definition.

65.    Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, patients, and students have experienced and have been harmed by the noxious odors emitted from the Facility into public spaces. However, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of lost property values and/or loss of use and enjoyment of their private property.

66.    Defendants repeatedly received odor complaints from local residents and RIDEM relating to the Facility, and Defendant reportedly keeps a log of incidents and odor complaints. However, despite being repeatedly notified of its noxious emissions harming neighboring properties, Defendants were undeterred and continued spewing noxious odors off-site and into the properties of Plaintiffs and the Class.

67.    Defendants negligently, intentionally, recklessly, and/or willfully failed to properly maintain, operate, and/or implement necessary odor control measures at the Facility, thereby causing the invasion of Plaintiffs' properties by noxious odors on intermittent and reoccurring dates too numerous to separately recount.

## CAUSE OF ACTION I

## PRIVATE NUISANCE

68.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully restated herein.

69.    The noxious odors that entered Plaintiffs' properties originated from the Facility maintained and operated by Defendants.

70.    The odors that have physically invaded Plaintiffs' properties are indecent and/or

offensive to the senses, and obstruct and interfere with the free use and enjoyment of Plaintiffs'

lives and properties, including in, but not limited to, the following ways:

      a.      causing Plaintiffs and the Class to remain inside their homes and forego the use of their yards and outdoor areas;

      b.      causing Plaintiffs and the Class to keep doors and windows closed when weather conditions otherwise would not so require;

      c.      causing substantial discomfort and inconvenience; and

      d.      causing Plaintiffs and the Class embarrassment and reluctance to invite guests to their homes.

71.    Further, the noxious odors invading Plaintiffs' properties have adversely impacted the values of Plaintiffs' and the Class's property and deprived the Plaintiffs and the Class of the full value of their property interests.

72.    Defendants owe and continue to owe a duty to Plaintiffs to take positive action to prevent and/or abate the interference with the invasion of the private interests of Plaintiffs and the Class.

73.    By failing to reasonably operate, repair, and/or maintain the facility so as to avoid the emission of nuisance odors, Defendants have unreasonably, negligently, and intentionally created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' and the Class's properties by noxious odors.

74.    As a foreseeable, direct, and proximate result of the foregoing conduct of Defendants, Plaintiffs and the Class suffered injuries and damage to their properties as alleged herein.

75.    Plaintiffs and the Class did not consent to the invasion of their properties by noxious odors.

76.    By causing noxious odors produced and controlled by Defendants to physically

16

invade Plaintiffs' land and properties, Defendants intentionally, willfully, recklessly, and negligently created a nuisance that substantially and unreasonably interfered with Plaintiffs' land and properties, and Defendants intentionally, willfully, recklessly, and negligently created a nuisance that substantially and unreasonably interfered with Plaintiffs' and the Class's comfortable use and enjoyment of their property.

77.    Defendants' substantial and unreasonable interference with Plaintiffs' and the Class's use and enjoyment of their properties constitutes a nuisance for which Defendants are liable to Plaintiffs for all damages arising from such nuisance, including compensatory, exemplary, and injunctive relief.

78.    Defendants' actions were, and continue to be, intentional, willful, and made with a conscious disregard for Plaintiffs' property rights, entitling Plaintiffs to all relief allowable by law.

## CAUSE OF ACTION II

### PUBLIC NUISANCE

79.    Plaintiffs reallege the preceding paragraphs as if fully restated herein.

80.    Plaintiffs and the Class utilized their properties as private residences and reside within the Class Area.

81.    The noxious odors that entered Plaintiffs' properties originated from Defendants' Facility.

82.    At all times relevant hereto, Defendants exercised control over the property and Facility from which the noxious emissions originated.

83.    The unreasonable odors caused by Defendants' Facility have been and continue to be dispersed across public and private land within the Class Area.

84.    By failing to reasonably construct, operate, and maintain its facility, Defendants

17

have caused an invasion of Plaintiffs' properties by noxious odors on unusually frequent occasions that are too numerous to separately list herein.

85.    The noxious fumes and odors invading Plaintiffs' properties are indecent and offensive to Plaintiffs and the Class, indecent and offensive to individuals with ordinary sensibilities, and obstruct the free use of Plaintiffs' properties so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

86.    Defendants' noxious emissions have substantially interfered with the lives, comfort, and convenience of the general community in the exercise of rights common to all, including the public's right to breathe uncontaminated air.

87.    Defendants knew that they were emitting noxious odors into the neighboring community; yet, they failed to take reasonably adequate steps to abate the nuisance and knowingly continued the emissions.

88.    Defendants owed and continue to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and land by emitting noxious pollutants into the ambient air.

89.    Defendants, by failing to reasonably operate, and/or maintain the Facility so as to abate the nuisance, have acted and continue to act, intentionally, willfully, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

90.    As a foreseeable, direct, and proximate result of the foregoing conduct of Defendants, Plaintiffs and the Class suffered damages to their properties as alleged herein.

91.    By causing noxious odors that physically invaded Plaintiffs' properties, Defendants created a nuisance that substantially and unreasonably impaired Plaintiffs' and the Class's use and enjoyment of their private properties on unusually frequent occasions too numerous to mention

18

individually.

92.    Such substantial and unreasonable interference includes, but is not limited to:

a.    loss of use and ability to enjoy the outside areas of Plaintiffs' properties or to open windows due to the presence of noxious odors;

b.    adverse impacts on the value of Plaintiffs' and the Class's properties and depriving them of the full value of their properties;

c.    causing substantial discomfort and inconvenience; and

d.    annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows when odors are present, inability or avoidance to invite guests to Plaintiffs' residences due to the embarrassment and annoyance of the noxious odors that invade Plaintiffs' properties.

93.    Separate and distinct from the private property damages incurred by Plaintiffs and the Class, Defendants' emissions have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

94.    Plaintiffs suffered and continue to suffer special harm to private property interests in the exercise of their public rights, including through interference with the use and enjoyment of private land and private property, deprivation of full value of private property, and adverse impacts on property values.

95.    Plaintiffs' damages to their private properties are different in kind from the interferences suffered by the public at-large exercising the same common right to breathe uncontaminated and unpolluted air.

96.    Plaintiffs did not consent to noxious odors entering upon their properties.

97.    Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative Class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure

substantial loss in the value of their properties.

98.    Defendants' substantial and unreasonable interference with Plaintiffs' properties rights constitute a nuisance for which Defendants are liable to Plaintiffs for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or other relief allowable by law.

## CAUSE OF ACTION III

### NEGLIGENCE

99.    Plaintiffs reallege the preceding paragraphs as if fully restated herein.

100.    Defendants negligently and improperly maintained and operated the facility such that they caused the invasion of noxious odors into Plaintiffs' homes, land, and property on occasions too numerous to list individually.

101.    As a direct and proximate result of Defendants' negligence in maintaining and operating the facility, Plaintiffs' properties were physically invaded by noxious odors.

102.    As a further direct and proximate result of the foregoing conduct of Defendants, Plaintiffs suffered injury to their properties as alleged herein.

103.    The invasion and subsequent damage suffered by Plaintiffs were reasonably foreseeable by Defendants.

104.    By failing to properly maintain and operate the Facility, Defendants failed to exercise the duty of ordinary care and diligence, which they owe to Plaintiffs, so noxious odors would not physically invade Plaintiffs' private properties.

105.    A properly operated and maintained facility will not emit noxious odors into neighboring residential areas.

106.    By failing to reasonably maintain and operate its facility, Defendants have

negligently and/or intentionally caused the invasion of Plaintiffs' properties by noxious odors.

107.    Defendants knowingly breached their duty to exercise ordinary care and diligence when they improperly maintained and operated the Facility and knew, or should have known upon reasonable inspection, that such actions would cause, and were causing, Plaintiffs' properties to be invaded by noxious odors.

108.    As a direct and proximate result of the failure of Defendants to exercise ordinary care, Plaintiffs' residences were invaded by noxious odors causing injury to their properties.

109.    As a direct and proximate result of Defendant's negligence, Plaintiffs suffered damages, including lost use and enjoyment of property and diminution of property values.

110.    Defendants knowingly allowing conditions to exist that caused noxious odors to physically invade Plaintiffs' properties constitutes negligence as it demonstrates a substantial lack of concern for whether an injury resulted to Plaintiffs' properties.

111.    Defendants' negligence entitles Plaintiffs to an award of compensatory, exemplary, injunctive, and other relief permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.    Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B.    Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.    Judgment in favor of Plaintiffs and the Class members and against Defendants;

D.      An award to Plaintiffs and the Class members of compensatory and exemplary

relief, in addition to any attorneys' fees and costs, including pre-judgment and post-judgment

interest thereupon, to which they are entitled by law;

E.      Injunctive relief not inconsistent with Defendants' federally and state enforced air

permits;

F.      An Order holding that entrance of the aforementioned noxious odors upon

Plaintiffs' properties constitutes a nuisance;

G.      An Order holding that entrance of the aforementioned noxious odors upon

Plaintiffs' properties was done by Defendants negligently; and

H.      Such further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury.

Dated: July 26, 2023

Respectfully Submitted:

*/s/ Cassandra L. Feeney*
Cassandra L. Feeney, #8606
**HAMELWAXLER ALLEN COLLINS**
395 Smith Street
Providence, RI 02908
T: (401) 455-3800
cfeeney@hwac.com
*Attorney for Plaintiffs*

Steven D. Liddle*
Matt Robb*
Reed Solt*
**LIDDLE SHEETS COULSON, P.C.**
975 E. Jefferson Avenue
Detroit, MI 48207
sliddle@ldclassaction.com
mrobb@lsccounsel.com
rsolt@lsccounsel.com
Telephone: (313) 392-0015
Facsimile (313) 392-0025
*Attorneys for Plaintiffs*
*\*Pro Hac Vice Applications to be submitted*