UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
MAURICE DOIRE and JOSHUA HOYE,  )
on behalf of themselves and all )
others similarly situated,      )
                               )
          Plaintiffs,           )
                               )
     v.                         )    C.A. No. 23-310 WES
                               )
SYNAGRO WOONSOCKET, LLC, and    )
JACOBS ENGINEERING GROUP, INC., )
                               )
          Defendants.           )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Plaintiffs Maurice Doire and Joshua Hoye bring this action on their own behalf and on behalf of other similarly situated Woonsocket, Rhode Island residents in response to the noxious odor emissions allegedly emanating from the local Wastewater Treatment Plant ("WWTP") and sewage sludge incinerator (the "Incinerator") (collectively, the "Facility"). Class Action Compl. & Jury Demand ("Compl.") ¶ 1, ECF No. 1. Defendants Synagro Woonsocket, LLC ("Synagro") and Jacobs Engineering Group, Inc. ("Jacobs") operate and maintain the Facility. Id. ¶ 1 & n.2. Plaintiffs allege that Defendants created private and public nuisances by failing to remedy the noxious odors and are negligent in managing the Facility. See id. ¶¶ 68-111. Plaintiffs pray for, among other

things, "compensatory and exemplary relief" and "[i]njunctive relief not inconsistent with Defendants' federally and state enforced air permits." Id. at 21-22.

Defendants separately move to dismiss the Complaint with similar and overlapping arguments. In support of their Motions, Defendants argue that the Court should dismiss the Complaint because it does not name a necessary and indispensable party, the City of Woonsocket - the owner and permittee of the Facility. Def. Synagro's Mem. Supp. Mot. Dismiss & Strike Class Allegations ("Synagro Mem.") 13-18, ECF No. 23; Def. Synagro Reply 7-13, ECF No. 27; Def. Jacobs's Mem. Law Supp. Mot. Dismiss ("Jacobs Mem.") 5-11, ECF No. 28-1; Def. Jacobs Reply 3-10, ECF No. 31. They also argue that Plaintiffs fail to state claims for public and private nuisance and negligence under Rhode Island law. Synagro Mem. 5-13; Synagro Reply 1-7; Jacobs Mem. 16-20; Jacobs Reply 13-16. Synagro contends that Plaintiffs' class allegations should be stricken, Synagro Mem. 18-23; Synagro Reply 13-15, while Jacobs argues that Plaintiffs sued the wrong entity, Jacobs Mem. 20; Jacobs Reply 16-17. Plaintiffs disagree with Defendants' assertions. See generally Pls.' Resp. & Mem. Opp'n Synagro's Mot. Dismiss & Strike Class Allegations ("Pls.' Synagro Opp'n"), ECF No. 26; Pls.' Resp. & Mem. Opp'n Jacobs's Mot. Dismiss ("Pls.' Jacobs Opp'n"), ECF No. 30.

The Court addresses only one of Defendants' arguments –

whether the City of Woonsocket is a necessary and indispensable party under Federal Rule of Civil Procedure 19.  The Court finds that it is.  Consequently, the Court dismisses the action under Federal Rule of Civil Procedure 12(b)(7).  The Court takes no position on Defendants' other arguments.  See Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary not to decide more.").

## I.    ALLEGATIONS[1]

The Facility processes the sewage for the City of Woonsocket, as well as several surrounding municipalities.  Compl. ¶ 37.  The sewage is handled in a two-step process.  Id. ¶¶ 35-36.  First, raw sewage is delivered to the WWTP where Jacobs treats, stores, and processes it.  Id. ¶¶ 38-39, 41.  Second, the treated sewage is dried and turned into "cakes" by Synagro.  Id. ¶¶ 36, 38, 40, 42.  It then disposes the cakes by burning them in the Incinerator.  Id. ¶¶ 36, 38.

This process has created "noxious and highly odiferous" emissions that have escaped into the surrounding community.  Id.

---

[1] The Court assumes that Plaintiffs' factual allegations are true for the purpose of assessing Defendants' motions.  J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015).

¶¶ 43-46.   Plaintiffs describe the odor as a "physical[]
inva[sion]" because the smell from the Facility is so bad that
Plaintiffs "cannot enjoy [their] home[s]," cannot sleep, and
"cannot walk outside [without] wanting to throw up." Id. ¶¶ 49,
52-54.   Plaintiffs report going elsewhere just to breathe fresh
air and opting not to open their windows to avoid the stench. Id.
¶¶ 53-54.   Generally, the noxious odors from the Facility have
caused "serious and substantial discomfort and inconvenience" and
are "offensive to a reasonable person." Id. ¶¶ 60-61. Even more,
the smell has had an adverse impact on Plaintiffs' property values.
Id. ¶ 62.

    The problems and harms associated with the noxious odors
should not come as a surprise to Defendants. See id. ¶¶ 55-56.
On numerous occasions, Defendants have received notices from the
Rhode Island Department of Environmental Management and the U.S.
Environmental Protection Agency for non-compliance with applicable
state and federal law. Id. ¶ 56.   The odor has also been a topic
of discussion among residents before the Woonsocket City Council.
Id.   A properly maintained facility would have "collect[ed],
capture[d], mitigate[d] and control[led] odorous compounds to
prevent noxious off-site odor emissions." Id. ¶ 51.   Despite
having a legal obligation to control the odors being emitted from
the Facility, Defendants continue to "negligently, intentionally,
recklessly, and/or willfully" operate and maintain the Facility

4

and failed to prevent these odors.  Id. ¶¶ 55, 66.  Because Defendants have taken no steps to correct this issue, things finally hit the fan with the filing of this lawsuit.  See generally id.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 19 guides the Court's determination of whether a suit should be dismissed absent a necessary and indispensable party.  Rule 19 outlines a two-part inquiry.  First, if a party is "necessary" to the action, then the party should be joined if feasible.  Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010); see Fed. R. Civ. P. 19(a).  If, however, joinder of the party is infeasible – e.g., joinder would divest the Court of subject-matter jurisdiction – the Court must determine if the party is "indispensable" or whether the case can move forward without the party.  Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc., 889 F.3d 30, 37 (1st Cir. 2018); Jimenez, 597 F.3d at 25; see Fed. R. Civ. P. 19(b).  Rule 12(b)(7) requires dismissal if it is the former.  Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008).  The moving party bears the burden of showing why the absent party should be joined.  J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015).  This burden can be met both with the allegations in the complaint and evidence outside the pleadings.  New Ming Inc. v. Zhuang, No. 22-11020-MPK, 2022 WL 17177736, at *5 (D. Mass. Nov. 23, 2022).

When evaluating the two prongs, the Court must be cognizant of the policies underlying Rule 19, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Acton Co. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982); see Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989) (describing how the court must consider "efficiency and fairness"). Indeed, it is a "practical determination" that is contingent on the unique facts of the case. Picciotto, 512 F.3d at 16 (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 (1968)). Moreover, Rule 19 attempts to protect the interests of parties that have not been named in the litigation but ought to be. Jimenez, 597 F.3d at 25.

## III. DISCUSSION

The City of Woonsocket ("the City") owns the Facility. Defendants have contractual relationships with the City.[2] But

---

[2] See Ex. A Synagro Mem., Operating Agreement Between Synagro and the City (Nov. 5, 2003) ("Synagro Agreement"), ECF No. 23-1; Ex. A Jacobs Mem., Operating Agreement Between CH2M Hill Engineers, Inc. and the City (June 27, 2012) ("Jacobs Agreement"), ECF No. 28-2. As noted above, Jacobs avers that Plaintiffs sued the wrong entity. See Def. Jacobs's Mem. Law Supp. Mot. Dismiss 20, ECF No. 28-1; Def. Jacobs Reply 16-17, ECF No. 31. Without taking a position on the issue, the Court will refer to the agreement

Plaintiffs do not name the City in their Complaint.  According to Defendants, this omission is fatal because the City is both a necessary and indispensable party, but joining it would divest this Court of subject-matter jurisdiction.  Given this, the case should be dismissed.

### A. Whether the City is a Necessary Party

To be a necessary party – or a "required party" - under Rule 19, the movant must show

> (1) <u>Required Party</u>. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  Subsection (a)(1)(A) concentrates on when a party's absence "would preclude the district court from being able to fashion meaningful relief as between the parties." <u>Bacardi Int'l Ltd. v. V. Suarez & Co., Inc.</u>, 719 F.3d 1, 10 (1st Cir. 2013)

---

between the City and CH2M Hill Engineers, Inc. as the "Jacobs Agreement."

(emphasis omitted) (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983)).  The alternative definition of "required party" under subsection (a)(1)(B)(i) involves "protecting the interests of the absent party."  Id.

Defendants contend that each definition is met because the City owns the Facility and has contractual relationships with Defendants.  Under the agreements, the City permits Defendants to operate the Facility.[3]  Any improvements and changes to the Facility – like capital improvements or structural repairs - must be approved by the City.[4]  In fact, any "upgrades or expansions" must be mutually agreed upon by Defendants and the City.  Ex. A Jacobs Mem., Operating Agreement Between Jacobs and the City (June 27, 2012) ("Jacobs Agreement") § 3.3.2(3), ECF No. 28-2; see id.

---

[3] See Synagro Agreement 1; id. § 5.3 (describing how, by the end of the contract, any changes to the Facility are the property of the City); Jacobs Agreement § 5.2 ("The Facility shall be owned by the City . . . for financing purposes at all times. [Jacobs] . . . shall not have any ownership or other property interest in the Facility."); id. at Schedule 8.1.

[4] See Synagro Agreement § 5.1 (requiring the City to approve "capital improvements"); Jacobs Agreement § 3.3.2(2) (outlining the requirements and limits for the Repair and Replacement Fund ("the Fund")); id. § 3.7 (requiring repairs and replacement expenses that exceed the monies in the Fund be approved by the City; outlining process for City approval for repairs and replacements; regarding "[s]tructural repairs" to be outside the purview of Jacobs's responsibilities unless undertaken at the City's request); id. § 5.4.5 (mandating that the finalized Facility Plan be approved by the City); id. § 5.15.1-2 (requiring Jacobs to collaborate with and obtain approval from the City for extra construction work).

§ 5.5.4 (describing how the City can only permit design changes).

At the same time, the agreements make plain that the City plays a role in containing noxious orders. See Ex. A Synagro Mem., Operating Agreement Between Synagro and the City (Nov. 5, 2003) ("Synagro Agreement") § 4.11, ECF No. 23-1 (regarding the processing of sludge); Jacobs Agreement, Schedule 2, § 2.2.6.1 ("The City and Company currently share responsibility for responding to odor complaints."). And the contract with Synagro requires the City to "contain odors from the [Facility], taking corrective measures at the Plant if odors therefrom become a problem." Synagro Agreement § 4.11.

The language in the City's agreements with Synagro and Jacobs convinces the Court that it cannot provide complete relief among the current parties. In their Complaint, Plaintiffs ask for injunctive relief to remedy the noxious odors that Defendants allegedly produce. Compl. at 22. Such relief may require Defendants to make significant changes to the City-owned Facility. It is true, as Plaintiffs argue, Defendants have authority and responsibility under the agreements to manage odors emanating from the Facility. See Pls.' Synagro Opp'n 26; Pls.' Jacobs Opp'n 12-13. Even so, the responsibility to manage the operations of the Facility does not mean Defendants have authority to implement capital or structural changes beyond what is allowed under the agreements, or that costs more than what is allocated to them by

the City.

Notably, under the agreements, Defendants cannot make capital and structural changes to the Facility without the cooperation and approval from the City.  See supra pp. 8-9 & n.4.  If the Court were to order injunctive relief that requires structural changes, it is entirely possible that the City – as a non-party – could withhold its approval; the parties and the Court would have no power to force the City to act.  See Picciotto, 512 F.3d at 16-17 (holding that a ruling against an absent party would not be binding in related litigation in which the absent party was named); 7 Fed. Prac. & Proc. Civ. § 1611 (3d ed. 2024) (noting that a judgment does not bind an absent party).  This is especially a concern given that the management of the Facility's odors is a joint responsibility between Defendants and the City.  Accordingly, the Court finds that the City is a necessary party under Rule 19(a)(1)(A).  See Wright v. Incline Vill. Gen. Improvement Dist., 597 F. Supp. 2d 1191, 1206 (D. Nev. 2009) ("[W]here a plaintiff seeks injunctive or declaratory relief and a third-party has an enforceable interest in the subject matter of the dispute, the court cannot grant complete relief in the third party's absence.")

Additionally, the City, as the owner of the Facility, by being left out of the litigation, cannot protect its property interest in the Facility.  Any injunctive relief could not only affect its property interest in the Facility, but also the revenue it receives

from it.  See Synagro Agreement § 7.5(c) (outlining the amount Synagro shall pay to the City for dry sludge).  As to the former, the City could not protect its property interest in the Facility to the extent injunctive relief affects its structure or how it operates.  As to the latter, injunctive relief could alter how sludge is processed, which may affect how much revenue is collected by the City.  In sum, by being absent, the City cannot protect its interest in the Facility.  See Nautor Swan Glob. Serv., S.L. v. S/V Red Sky, No. 22-00386-JJM, 2023 WL 4744748, at *1 (D.R.I. July 25, 2023)(finding the owner of a vessel necessary in a case concerning that vessel), adopted by text order, (Aug. 18, 2023); Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., No. 2:05-2782-CWH, 2008 WL 2462862, at *7 (D.S.C. June 13, 2008) (finding landowners necessary in CERCLA action when their property had to be accessed during remediation).

Additionally, an injunction would necessarily affect the agreements between the City and Defendants.  The agreements "provide[] various obligations that Defendant[s] shall perform for the benefit of [the City of Woonsocket]."  See Downing v. Globe Direct LLC, 806 F. Supp. 2d 461, 467 (D. Mass. 2011), aff'd, 682 F.3d 18 (1st Cir. 2012).  The City has an interest in its agreements with Jacobs and Synagro.  Any injunction issued by this Court would affect Defendants' obligations to the City to the extent that it would require them to make capital improvements or structural

changes without the approval of the City or require Defendants to seek additional funding.  Alternatively, such relief could impede Defendants' ability to fulfill their contractual obligations to the City.  Thus, the outcome of this litigation would materially impair the City's interest in the contracts it bargained for with Defendants, making the City a necessary party.  See id. (finding the Commonwealth of Massachusetts was a necessary party because the defendant owed contractual obligations to the Commonwealth and relief in favor of the plaintiffs would "effectively invalidate" that contract); Rivera Rojas v. Loewen Grp. Int'l, Inc., 178 F.R.D. 356, 362 (D.P.R. 1998) (finding that the unnamed company "certainly has an interest in the litigation of these issues which pertain to contracts to which [the company] is a party"); see also Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1023 (9th Cir. 2002) (holding parties had an interest in protecting bargained-for terms of a contract that could be affected by litigation).  Consequently, the City is also a necessary party under Rule 19(a)(1)(B)(i) given its interest in the Facility and its contracts with Defendants.[5]

_____

[5] Plaintiffs rely on United States v. San Juan Bay Marina for the proposition that "some ownership interest in [property that is the subject of litigation] is insufficient to render it a 'necessary party' under Rule 19(a)."  239 F.3d 400, 406 (1st Cir. 2001); see Pls.' Resp. & Mem. Law Opp'n Jacobs's Mot. Dismiss 13, ECF No. 30.  There, the government sued and sought injunctive relief requiring the defendants to reverse their work building piers along a waterway.  San Juan, 239 F.3d at 402.  The defendants made improvements on property that they leased from a Puerto Rican government entity.  Id.  The defendants argued the entity was a

**B. Whether the Court Can Still Maintain Subject-Matter Jurisdiction if the City Is Named as a Party**

Now that the Court has concluded that the City is a necessary party, it must determine if joinder would be feasible. There is no disagreement that if Plaintiffs named the City as a defendant, it would destroy the Court's traditional diversity jurisdiction because Plaintiffs, most of the class members, and the City are domiciled in Rhode Island.[6] See Synagro Mem. 15-16; Pls.' Synagro Opp'n 24; Jacobs Mem. 7-8; Pls.' Jacobs Opp'n 14-15. In other words, if the City was a defendant in this case, there would not

_____

necessary party. Id. The First Circuit held that the entity was not a necessary party because it only had a reversionary interest in the property; it had no legal recourse to change any improvements made by the defendants. Id. at 406. Thus, the entity had no legal cognizable interest to protect. Id.

San Juan is easily distinguishable because the City has a fully vested property interest in the Facility, which could be affected by any injunctive relief. True, having a property interest does not necessarily mean a party is necessary. Here, unlike in San Juan, the City has legal recourse to protect its property interest in the Facility given that any structural changes and capital improvements require the cooperation and approval of the City. Significantly, the City owns the Facility and outsources its management to Defendants. Defendants have no ownership interest in the Facility. And any alterations to the Facility that conflict with the authority given to Defendants under the agreements may constitute a claim for breach of contract. Simply put, unlike in San Juan, Defendants here do not have unfettered discretion in operating the Facility. Given this, San Juan is inapplicable.

[6] Synagro is incorporated and has its principal place of business in Maryland; Jacobs is incorporated in Delaware and headquartered in Texas. Class Action Compl. & Jury Demand ¶¶ 5-6, ECF No. 1.

be complete diversity among the parties. See Picciotto, 512 F.3d at 17.

Alternatively, Plaintiffs argue that joinder of the City is feasible because the Court would have subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Pls.' Jacobs Opp'n 14-15; see Compl. ¶ 11. The statute only requires minimal diversity where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which - (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). If Plaintiffs joined the City, the requirements under CAFA would be met.

But, even if minimal diversity is present under CAFA, the Court must determine if CAFA's local controversy exception applies. Defendants argue that is does, requiring the Court to decline jurisdiction. Synagro Reply 10-13; Jacobs Mem. 7-10; Jacobs Reply 7-9. Under the exception, the "district court shall decline to exercise jurisdiction":

(A)(i) over a class action in which -

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for

the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4). Defendants, as the party invoking the exception, bear the burden of proving that it applies. See Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009).

Here, there is no dispute that most – if not all – the members of the proposed plaintiff class are citizens of Rhode Island. See 28 U.S.C. § 1332(d)(4)(A)(i)(I); Compl. ¶ 13; Synagro Reply 10-11; Jacobs Mem. 8. So too is the City. See 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc); see also R.I. Gen. Laws § 45-15-1 (authorizing suit against Rhode Island municipalities). Moreover, the Court is not aware of any cases that have been filed within three years of Plaintiffs' Complaint concerning the factual allegations that Plaintiffs make against Defendants or the City. See 28 U.S.C. § 1332(d)(4)(A)(ii).

What is in dispute is the extent to which Plaintiffs seek "significant relief" from the City and whether the City's "conduct forms a significant basis for" Plaintiffs' claims. See id. § 1332

(d)(4)(A)(i)(I)(aa)-(bb).   The First Circuit has not had an opportunity to opine on the meaning of "significant" in this context.   One court stated that the term "require[s] that the subject conduct be significant in relation to the conduct alleged against other defendants in the complaint, and that the relief sought against the local defendant be significant in relation to the total relief sought by the class." Nightingale v. Nat'l Grid USA Serv. Co., Inc., 578 F. Supp. 3d 190, 192 (D. Mass. 2022) (collecting cases).   To be sure, "significant" is not to be confused with "predominant"; the exception does not require relief sought from a local defendant or their conduct to be more significant than other relief or conduct. Simmons v. Ambit Energy Holdings, LLC, No. 13-CV-6240 (JMF), 2014 WL 5026252, at *5 (S.D.N.Y. Sept. 30, 2014).   Rather, under its ordinary meaning, "significant" is "defined as 'important, notable.'" Kaufman, 561 F.3d at 157 (quoting Oxford English Dictionary (2d ed. 1989)).

If the City was named as a party, Plaintiffs would seek significant relief from it.   As previously mentioned, the City owns the Facility and has significant control over whether capital improvements and structural repairs occur. See supra pp. 6, 8-10.   If granted, injunctive relief would likely require upgrades and changes which only the City can approve. See supra pp. 8-10. And the regulation of noxious odors also falls at the feet of the City. See supra pp. 8-9.   Though Plaintiffs attempt to minimize

the injunctive relief they seek, see Pls.' Jacobs Opp'n 10, 13-14, they cannot get around the fact that such relief in any context "is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 142 (2010). Additionally, to the extent monetary damages are awarded in this case, Plaintiffs concede that the City could be subject to joint-and-several liability. Pls.' Synagro Opp'n 24-25, Pls.' Jacobs Opp'n 11. This concession confirms that the City is a party "from whom significant relief is sought by members of the plaintiff class." Moore v. IOD Inc., No. 14-CV-8406 (VSB), 2016 WL 8941200, at *6 (S.D.N.Y. Mar. 24, 2016) (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)); see St. John v. ADESA, Inc., 22-CV-1257(GRB)(AYS), 2023 WL 6158697, at *2 (E.D.N.Y. Sept. 21, 2023), rev'd on other grounds, No. 23-7560-cv, 2024 WL 2972407 (2d Cir. June 13, 2024) (finding the plaintiff sought significant relief from an unnamed defendant where the plaintiff contended that it would be jointly and severally liable for his and the class's damages). Taken together, Plaintiffs would seek significant monetary and injunctive relief from the City if it was named as a party.

The City's conduct also forms a significant basis for Plaintiffs' claims. Again, the City owns the Facility. It contracted with Synagro and Jacobs to manage and maintain the WWTP and the Incinerator. Without the City's role in owning the

Facility and outsourcing its management, there would be no cause of action against Defendants. See Moore, 2016 WL 8941200, at *7 (holding that local defendant's conduct satisfied this prong "because, but for [local defendant's] involvement, Plaintiffs would have no causes of action against [the other defendant]"); Simmons, 2014 WL 5026252, at *6 ("Put simply . . . without [the local defendant], there would be no basis for many, if not all, of the claims in this case." (emphasis omitted)). Accordingly, the City's conduct forms a significant basis for Plaintiffs' claims.

In sum, CAFA's local controversy exception requires the Court to decline jurisdiction. Intuitively, this makes sense. "The local controversy exception exists to ensure that 'a truly local controversy - a controversy that uniquely affects a particular locality to the exclusion of all others' — remains in state court." Mason v. Lockwood, Andrews & Newnan, P.C., 842 F.3d 383, 397 (6th Cir. 2016) (quoting S. Rep. No. 109-14, 39 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 38). This is one of those controversies - a lawsuit brought by and on behalf of mostly Woonsocket residents concerning conduct that took place entirely in Woonsocket, concerning a waste plant owned by the City of Woonsocket that provides a quintessential community service, alleging violations of state law. See id. ("[I]t defies common sense to say a suit by Flint residents against those purportedly responsible for injuring them through their municipal water service is not a 'local

18

controversy.'"). Thus, the Court could not retain subject-matter jurisdiction over this case if the City was a named defendant.

**C. Whether the City is an Indispensable Party**

Given that the City is a necessary party, and its joinder is not feasible, the Court must determine if the case can move forward without the City. Under Rule 19, "the court must determine 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed.'" Picciotto, 512 F.3d at 18 (quoting Fed. R. Civ. P. 19(b)). Said differently, the Court must determine whether the party's presence "is so important" that, "in terms of efficiency or fairness," the case should not move forward without the party. Pujol, 877 F.2d at 134. Rule 19(b) identifies factors the Court may consider, including:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

19

The first factor is met for reasons similar to those explained above. <u>See</u> <u>id.</u> Fed. R. Civ. P. 19(b)(1); <u>see also</u> <u>supra</u> pp. 8-10.  Any injunctive relief would affect the City's ownership interest in the Facility to the extent it would require modifications, upgrades, or expansions of the Incinerator or the WWTP.  Moreover, injunctive relief that addresses the discharge of noxious odors could affect the City's revenue.  If Defendants had to make certain changes to the Facility, they may have to seek additional funding from the City.  Thus, as a property owner, the City may be prejudiced by any injunction issued by the Court.  <u>See</u> <u>Steel Valley Auth. v. Union Switch & Signal Div.</u>, 809 F.2d 1006, 1014 (3d Cir. 1987); <u>Juarez v. U.S. Bank Nat'l Ass'n</u>, No. 11-10318-DJC, 2014 WL 815343, at *5 (D. Mass. Mar. 1, 2014); <u>PennEnvironment v. PPG Indus., Inc.</u>, 964 F. Supp. 2d 429, 474 (W.D. Pa. 2013) ("Although Plaintiffs have not stated any claims against [the city], any decision in this case will affect its interest in the Site as property owner and thus it is properly joined as an indispensable party under Rule 19."); <u>Lykins v. Westinghouse Elec.</u>, 710 F. Supp. 1122, 1124 (E.D. Ky. 1988) (finding that the unnamed site owner would be prejudiced if left out of the action because it could not protect its property interest).  It may also affect the contractual relationships the City has with Synagro and Jacobs.  <u>See</u> <u>Rivera Rojas</u>, 178 F.R.D. at 362-63.  Thus, factor one is met here.

The second factor is also met for reasons previously stated. Plaintiffs seek an injunction that would mitigate the alleged noxious orders consistent with the applicable federal and state air quality permits. Compl. at 22. Any injunctive relief crafted by the Court would necessarily implicate the City's interest in the Facility, the revenue that it generates from the Facility, and the contractual relationships it has with Defendants. Plaintiffs fail to identify ways the Court could fashion injunctive relief and merely state that "any future injunctive order can be shaped to ensure that the City's interests and rights are adequately protected." Pls.' Jacobs Opp'n 16. The Court does not know what Plaintiffs have in mind. Nor does Plaintiffs' assertion take into account the competing interests of the City, Defendants, and Woonsocket residents. Given this, the second factor is also met.

The third factor requires the Court to not only consider the issue of whether relief could be shaped to the satisfaction of the parties, but also "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Picciotto, 512 F.3d at 18 (quoting Provident Tradesmens Bank, 390 U.S. at 111). As touched on above, if the Court were to issue an injunction, it would only be worth the paper it is printed on given that any necessary modifications, additions, or changes would require the acquiescence of the City. Defendants are limited by the authority given to them by the City. The City's potential

inaction may precipitate additional litigation. Furthermore, Plaintiffs admit that any monetary award would likely require additional litigation because the City may be jointly and severally liable. So, if the City is absent from this case, any awarded relief would not be the final word on this matter. Accordingly, the third factor is met.

As to the last factor, if the Court dismisses the action, Plaintiffs would not be out of luck. They would have an adequate remedy for nonjoinder by filing an action in state court that names the City as a defendant. See Fed. R. Civ. P. 19(b)(4); Picciotto, 512 F.3d at 19; H.D. Corp. of P.R. v. Ford Motor Co., 791 F.2d 987, 993 (1st Cir. 1986) (stating that "we have said that plaintiffs have an adequate remedy in the commonwealth courts to vindicate their claims against both [defendants]"); Big Bob's Flooring Outlet of Am., Inc. v. Elyachar, 566 F. Supp. 3d 89, 102 (D. Mass. 2021) (finding the fourth factor met where "all of the necessary parties are joined" in a state court where the suit is premised on state-law claims). Given that Defendants raise serious questions of state law, state courts are in a better position to resolve them.

The Rule 19(b) factors convince the Court that the City is an indispensable party. Consequently, based on everything above, the Court concludes that the City is a necessary and indispensable party to this action and, therefore, the case cannot proceed in

its absence.

## IV.    CONCLUSION

For the reasons above, the Court GRANTS Synagro's Motion to Dismiss and Strike Class Action Allegations, ECF No. 22, and Jacobs's Motion to Dismiss, ECF No. 28, under Rule 12(b)(7) for failure to join a required party under Rule 19.    Accordingly, Plaintiffs' case is DISMISSED without prejudice.


IT IS SO ORDERED.

William E. Smith
District Judge
Date: July 11, 2024